STATE OF CONNECTICUT *v.* ELVIN SANCHEZ
(AC 22979)

Foti, Mihalakos and Healey, Js.

Argued October 17, 2002—officially released February 25, 2003

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Elvin Sanchez, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of conspiracy to possess a narcotic substance with the intent to sell in violation of General Statutes §§ 53a-48 and 21a-277 (a), possession of a narcotic substance with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a), possession of a narcotic substance with the intent to sell in violation of General Statutes § 21a-277 (a) and possession of marijuana in an amount less than four ounces in violation of General

Statutes § 21a-279 (c). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 17, 1999, the Waterbury police department's tactical narcotics team patrolled the Lincoln and Chapman Streets area, which was known as a heavy drug trafficking neighborhood. The team, which consisted of Officers Lawrence Smith, Robert Jones and Timothy Jackson, was riding in an unmarked car and noticed a brown Mercury Sable parked, but with the motor running. Upon driving alongside the vehicle, the team saw two men sitting in the car. The officers later testified that the defendant was in the driver's seat and Nick Ortiz was in the passenger's seat. Smith and Jones observed the defendant smoking a blunt,[1] and all three officers could smell the marijuana because both the officers' and defendant's windows were down.

Upon noticing the officers' car, the defendant stated, "Oh, shit!" Subsequently, the defendant began to drive away and was stopped by the officers shortly thereafter. Smith and Jones witnessed the defendant flicking the blunt out of the passenger's window. The officers arrested and searched both the defendant and, after chasing him down, Ortiz. The team retrieved the blunt from the sidewalk and discovered, upon searching the vehicle, in plain view in an open ashtray a bag containing approximately thirteen grams of freebase form cocaine (crack cocaine), a green bag containing nearly two grams of marijuana and a ripped plastic bag containing 0.55 grams of salt form cocaine (powder cocaine). The officers also confiscated $67 but found no drug paraphernalia on either the defendant or Ortiz, or in the car.

---

[1] A "blunt" is a street term used to describe a cigar filled with marijuana, instead of tobacco, and smoked to ingest the drug. See also *State* v. *Holmes*, 257 Conn. 248, 249 n.2, 777 A.2d 627 (2001), cert. denied, 535 U.S. 939, 122 S. Ct. 1321, 152 L. Ed. 2d 229 (2002).

On April 6, 2001, after trial, the jury returned a verdict of guilty as to all counts. On June 15, 2001, the court sentenced the defendant to a total effective term of twenty years incarceration, execution suspended after eleven years, with five years of probation to be served concurrently. Additional facts will be set forth as necessary.

On appeal, the defendant claims that (1) his conviction in violation of § 21a-278 (a) should have been dismissed because his probable cause hearing was structurally defective, (2) his conviction for having violated §§ 21a-278 (a) and 21a-277 (a) violates the federal and state proscriptions against double jeopardy, (3) the court improperly denied his motions for a judgment of acquittal on the ground of insufficient evidence as to the conviction on the first three counts of the information, (4) the court abused its discretion by refusing to let him present evidence of his coconspirator's prior criminal conviction, (5) the court abused its discretion by refusing to let him present evidence of his coconspirator's medical records and (6) the court violated his federal and state constitutional rights to confrontation and to present a defense by not admitting extrinsic evidence to impeach two state's witnesses. We affirm the judgment of the trial court.

I

The defendant first claims that the court should have granted his motion to dismiss the second count of the information, which charged him with possession of a narcotic substance with the intent to sell in violation of § 21a-278 (a). The defendant argues that his initial probable cause hearing was structurally defective because he was subject to a possible sentence of life imprisonment and was not represented by counsel at that critical stage in the proceedings. The defendant,

claiming that General Statutes § 54-46a[2] requires that a probable cause hearing be conducted within sixty days of the original filing of the information and that his second probable cause hearing occurred well after that period, challenges on appeal his second probable cause hearing. He concludes, therefore, that count two should have been dismissed. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. On June 18, 1999, the state filed an information charging the defendant with, among other counts, possession of a narcotic substance with the intent to sell in violation of § 21a-278 (a). The court, *Damiani, J.*, scheduled the probable cause hearing for August 17, 1999, sixty days from the date of the original filing of the information pursuant to § 54-46a (b). The defendant was put on notice, prior to the probable cause hearing, that if he failed to appear with counsel, he would have to proceed pro se. On August 17, 1999, the defendant arrived without counsel for the probable cause hearing, and the court, *Damiani, J.*, ordered him to appear, nonetheless, before the court, *Gill, J.*, who found that probable cause existed.

On March 21, 2001, after jury selection was completed, the defendant filed a motion to dismiss the second count of the information on the ground that he was not represented by counsel at the probable cause hearing. On March 23, 2001, the court, *Damiani, J.*,

---

[2] General Statutes § 54-46a provides in relevant part: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. . . ."

denied the motion to dismiss, ruling that the appropriate remedy was not to dismiss the count, but rather to schedule a new probable cause hearing. That same day, the defendant appeared before the court, *Cofield, J.*, represented by counsel, and was given a new probable cause hearing. The court, again, found probable cause and trial commenced.

An adversarial probable cause hearing is a critical stage in the prosecution and a jurisdictional prerequisite to continuing prosecution. *State* v. *Mitchell*, 200 Conn. 323, 332, 512 A.2d 140 (1986). "Accordingly, an invalid finding of probable cause at such a hearing undermines the court's power to hear the case at trial." Id. Our Supreme Court has "characterized the consequence of a defective probable cause hearing as an impairment of personal jurisdiction, not subject matter jurisdiction. . . . That characterization is consistent with the implicit understanding in *Mitchell* that the remedy for a defective probable cause hearing is not an acquittal but a new probable cause hearing and a new trial." (Citations omitted.) *State* v. *Boyd*, 221 Conn. 685, 697, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992); see also *State* v. *White*, 229 Conn. 125, 139–40, 640 A.2d 572 (1994) (where exculpatory evidence not presented at probable cause hearing, case remanded for new probable cause hearing).

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de

novo." (Internal quotation marks omitted.) *State* v. *Bordeleau*, 72 Conn. App. 33, 39, 804 A.2d 231 (2002).

In this case, the court properly denied the defendant's motion to dismiss. The defendant mistakenly relies on *State* v. *Cohens*, 62 Conn. App. 345, 773 A.2d 363, cert. denied, 256 Conn. 918, 774 A.2d 139 (2001), in which a defendant was forced to represent himself at his criminal trial without the court first obtaining a valid waiver of his right to counsel. Id., 351–52. In this case, however, the court ordered a second probable cause hearing to be held so counsel *could* represent the defendant and to avoid any problems with the initial probable cause hearing. Therefore, the second probable cause hearing, pursuant to the well established remedy previously stated, cured any defect in the initial hearing even though the second hearing was held after the sixty day time period. Additionally, although the jury was chosen prior to the second probable cause hearing, it was not tainted because it was unaware of the second probable cause hearing, and the charges remained the same as those that were presented at the initial hearing. Furthermore, after the appropriate remedy was carried out, the defendant received a fair trial. Thus, there was no violation § 54-46a, and the motion to dismiss properly was denied.

## II

In his second claim, which is unpreserved, the defendant asserts that his conviction of possession of a narcotic substance with the intent to sell in violation of §§ 21a-278 (a) (crack cocaine)[3] and 21a-277 (a) (powder

[3] General Statutes § 21a-278 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form . . . and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. . . ."

cocaine)[4] violated the state and federal constitutional prohibitions against double jeopardy. In view of the facts that powder cocaine and crack cocaine are two distinct narcotics and that the defendant was charged with having violated two different statutes, we find no double jeopardy violation.[5]

The defendant claims, and the state concurs, that a claim of double jeopardy is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] "[I]f double jeopardy claims arising in the context of a single trial are raised for the first time on appeal, these claims are reviewable . . . ." (Internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 671, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). Although we agree that *Golding* review should be afforded, the defendant fails to satisfy the third prong of *Golding* because no double jeopardy violation exists.

[4] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell . . . to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[5] The defendant also claims a violation under our state constitution. Because the defendant has provided no independent analysis of his double jeopardy claim under the state constitution, we consider his claim under the federal constitution only. See *State* v. *Dorans*, 261 Conn. 730, 745 n.17, 806 A.2d 1033 (2002).

[6] Under *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . It is [often] unnecessary for this court to review all four prongs of *Golding* because the defendant's claim will fail if any one of the conditions is not met." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]. . . . The defendant's claim in this appeal implicates the last of these three functions.

"The double jeopardy analysis in the context of a single trial is a two part process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360–61, 796 A.2d 1118 (2002). It is undisputed that the charges arose out of the same act.

The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which holds: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

"To reach that conclusion, we employ the long established rules of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the

legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary." (Citations omitted; internal quotation marks omitted.) *State* v. *Barber*, supra, 64 Conn. App. 674–75. As a threshold matter, therefore, we consider whether §§ 21a-278 (a) and 21a-277 (a) are plain and unambiguous on their face.

The present case is analogous to *State* v. *Hill*, 237 Conn. 81, 675 A.2d 866 (1996). In *Hill*, the defendant was convicted of possession of more than one-half gram of crack cocaine with the intent sell in violation of § 21a-278 (a) and possession of heroin with intent to sell in violation of § 21a-277 (a). Id., 83. Both drugs were found at the same time, upon apprehending the defendant, and in the same bag. Id., 84–85.

In *Hill*, our Supreme Court stated that "[a]pplication of the *Blockburger* test to this case leads to the conclusion that the information alleges two separate and distinct offenses for double jeopardy purposes. The first count of the information charges the defendant with possessing *more than one-half gram of cocaine in a freebase form* with the intent to sell, while the second count alleges that the defendant possessed *heroin* with the intent to sell. Because each of the two charges requires proof of a fact that the other does not, it may be presumed that the legislature did not intend to prohibit multiple punishments for the conduct underlying the two charges.

"Because the *Blockburger* test creates only a rebuttable presumption of legislative intent, the test is not

controlling when a contrary intent is manifest. . . . It is clear, however, that the pertinent statutory language, when viewed in the context of the purpose of our drug laws, fully supports the conclusion that the possession of one-half gram or more of crack cocaine with the intent to sell by a person who is not drug-dependent under § 21a-278 (a) and possession of heroin with the intent to sell under § 21a-277 (a) give rise to separate crimes carrying separate punishments." (Citations omitted; emphasis in original.) Id., 100–101.

Applying the *Blockburger* test to this case also leads to the conclusion that the defendant was convicted of two separate and distinct offenses. The information charged the defendant with one count of possession of more than one-half gram of cocaine in a freebase form with the intent to sell and one count of possession of salt form cocaine with the intent to sell. Each of those charges requires proof of a fact that the other does not. In fact, the defendant was convicted of having violated the same statutes as was the defendant in *Hill*, the only difference being the actual drugs seized.

The *Hill* court classified crack cocaine and heroin as two distinct narcotics with entirely different properties. Id., 101. Similarly, crack cocaine and powder cocaine are two distinct narcotics with individual properties.[7]

---

[7] "[T]he meaning of the base form of cocaine [or crack cocaine] is undisputed in the scientific community. . . . [It is] a substance which when combined with an acid produces a salt. . . . [T]he chemical formula for cocaine base is $C_{17}H_{21}NO_4$; the formula for cocaine hydrochloride—a chemical term for [powder] cocaine—is $C_{17}H_{21}NO_4HCl$. . . . [T]he two forms have different solubility levels, different melting points and different molecular weights. . . . [J]ust about any chemical laboratory would be able to distinguish the difference between cocaine base and cocaine salt or other forms." (Internal quotation marks omitted.) *United States* v. *Jackson*, 968 F.2d 158, 161 (2d Cir.), cert. denied, 506 U.S. 1024, 113 S. Ct. 664, 121 L. Ed. 2d 589 (1992).

At trial, Richard Pinder, a state toxicologist, testified as follows. When crack cocaine is heated, it will melt to an oil, vaporize and can be inhaled through the nose or mouth to be absorbed into the blood through the lungs. Crack cocaine is consumed rapidly into the blood because the lungs have

"That the legislature recognized this difference is reflected in the fact that in order to prove the crime of possession of narcotics with the intent to sell under § 21a-278 (a), the state must establish that the defendant possessed at least *one ounce* of [powder cocaine], whereas the state may obtain a conviction under the same statutory subsection by proving that the defendant possessed as little as *one-half gram* of crack cocaine. Moreover, it is unreasonable to conclude that the legislature would have authorized separate prosecutions for the possession of one-half gram of [crack] cocaine with the intent to sell and for the possession of one ounce of [powder cocaine] with the intent to sell, as it apparently has under § 21a-278 (a), and to prohibit separate prosecutions for the possession of at least one-half gram of crack cocaine with the intent to sell under § 21a-278 (a) and for the possession of [powder cocaine] with the intent to sell under § 21a-277 (a)."[8] (Emphasis in original.) Id.

Furthermore, the statutory construction urged by the defendant in this case, as was urged by the defendant

a vast blood supply. In contrast, powder cocaine is created by combining cocaine molecules and hydrogen chloride to form cocaine hydrogen chloride. Powder cocaine is water soluble, if heated will decompose and is ingested primarily by snorting the powder into the nose, where the powder will dissolve into the mucus membrane and pass into the bloodstream. Unlike crack cocaine, powder cocaine is not consumed as rapidly because the nose has a smaller surface area as compared to the lungs, so powder cocaine takes longer to pass into the blood supply. See also *State* v. *Synakorn*, 239 Conn. 427, 431–32, 685 A.2d 1123 (1996).

[8] "In 1994, Congress directed the Sentencing Commission to report on the differences in penalty levels that apply to different forms of cocaine . . . . After an extensive study of the patterns of cocaine use and distribution . . . . the Commission found that crack cocaine may pose a greater risk of psychological addiction than powder cocaine; that crack cocaine can be sold more cheaply and in more potent quantities; that there was a higher correlation between crack cocaine and systemic violence; and that an increasing number of young people were being employed in the distribution of crack." (Citations omitted; internal quotation marks omitted.) *United States* v. *Teague*, 93 F.3d 81, 85 (2d Cir. 1996), cert. denied, 519 U.S. 1067, 117 S. Ct. 708, 136 L. Ed. 2d 629 (1997).

in *Hill*, would lead to a bizarre result. See id., 101. Under the defendant's construction, the state could not prosecute him for both possession of at least one-half gram of crack cocaine with the intent to sell under § 21a-278 (a) and for possession of powder cocaine with intent to sell under § 21a-277 (a) because, the defendant argues, without case law or reasoning, that those two drugs are the same, i.e., powder cocaine once "cooked" becomes crack cocaine. The state, however, cannot offer the powder cocaine to establish the crack cocaine offense, because powder cocaine and crack cocaine are not fungible for purposes of § 21a-278 (a). Likewise, the state cannot use the crack cocaine to prove the violation it alleged under § 21a-277 (a) because the information charged the defendant with a powder cocaine offense, not with a crack cocaine offense. If this court accepted the defendant's double jeopardy analysis, "the defendant would be immunized from criminal liability for one or the other of the two crimes merely because he happened to be in simultaneous possession of the two different types of narcotics." Id., 102. Abiding by our Supreme Court's precedent in *Hill*, we will not conclude that the legislature could have intended such a consequence.[9]

Moreover, "our drug laws reflect the strong public policy that neither the use nor the sale of illicit drugs will be tolerated in this state. The harshest sentences, of course, are reserved for professional drug dealers, who are deemed to pose the greatest threat to our society. Because an obvious purpose of our drug statutes is to reduce the drug trade in Connecticut, multiple

---

[9] The defendant relies on *State* v. *Rawls*, 198 Conn. 111, 121–22, 502 A.2d 374 (1985), in which our Supreme Court held that the simultaneous possession of cocaine and heroin did not give rise to two separate possessory offenses. Our Supreme Court, however, decided in *Hill* not to reconsider its determination in *Rawls*. See *State* v. *Hill*, supra, 237 Conn. 102–103 n.27.

punishments for the sale of two different kinds of drugs is entirely consistent with our state drug policy."[10] Id.

We conclude, therefore, that the legislature did not intend to bar multiple punishments for the simultaneous possession of crack cocaine with the intent to sell and powder cocaine with the intent to sell, and, accordingly, the defendant cannot prevail on his claim that his conviction violated the constitutional prohibition of double jeopardy.

### III

Next, the defendant claims the court improperly denied his motions for a judgment of acquittal, submitted on the ground of insufficient evidence, as to his conviction on the first three counts of the information: (1) conspiracy to possess a narcotic substance with the intent to sell in violation of §§ 53a-48 and 21a-277 (a); (2) possession of a narcotic substance with the intent to sell in violation of § 21a-278 (a); and (3) possession of a narcotic substance with the intent to sell in violation of § 21a-277 (a). We are not persuaded.

On June 17, 1999, the defendant was in the driver's seat of his uncle's automobile, with the engine running, when officers patrolling the area drove near the car, smelled marijuana and witnessed the defendant smoking a blunt. The defendant stated, "Oh shit!" drove off and tossed the blunt out the passenger's window. After being stopped, Ortiz attempted to evade arrest and, after a struggle, was apprehended. The defendant and Ortiz were arrested. The officers seized the blunt, confiscated approximately thirteen grams of crack cocaine

---

[10] The legislative history of General Statutes § 21a-278 (a) is consistent with that notion. During debate in the Senate prior to the statute's enactment, Senator Anthony V. Avallone stated: "The Bill is a serious attempt to deal with a serious problem in our society. . . . That [dealers] are going to be dealt with severely in the State of Connecticut." 30 S. Proc., Pt. 12, 1987 Sess., pp. 4410–11.

and two grams of marijuana from the car's ashtray, and about one-half gram of powder cocaine from the passenger's seat. Ortiz informed Jones that he had swallowed powder cocaine and was taken to St. Mary's Hospital in Waterbury. Although the police knew of both the defendant and Ortiz prior to the arrest, the police had never seen them together prior to the incident at issue.

At the close of the state's evidence, the defendant filed a motion for a judgment of acquittal as to the first three counts of the information, which was denied. After all the evidence was presented, the defendant again sought a judgment of acquittal on those three counts, which was denied. Finally, the court denied the postverdict motion for a judgment of acquittal after the defendant was found guilty on those counts.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact,

but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Barber*, supra, 64 Conn. App. 664–65.

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 798, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002); see *State* v. *Berger*, 249 Conn. 218, 224–25, 733 A.2d 156 (1999).

A

The first count of the four count information alleged conspiracy to possess a narcotic substance with the intent to sell in violation of §§ 53a-48[11] and 21a-277 (a). Specifically, the defendant challenges the inference the jury must have drawn permitting it to find that an agreement existed between Ortiz and himself. On the basis of our review of the record, we conclude that sufficient evidence existed from which the jury could infer an agreement between Ortiz and the defendant.

"To sustain a conviction under § 53a-48 (a), the state needs to prove beyond a reasonable doubt (1) that a

---

[11] General Statutes § 53a-48 (a) provides in relevant part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ." See also footnote 4.

defendant intended that conduct constituting a crime be performed, (2) that he agreed with one or more persons to engage in or cause the performance of such conduct and (3) that he or any one of those persons committed an overt act in pursuance of such conspiracy. . . . While the state must prove an agreement, the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . .

"Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they *intended to commit the elements of the offense*. . . . Possession with intent to sell cocaine in violation of § 21a-277 (a) requires a specific intent to sell . . . .

"[In addition, an] overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator. . . . Furthermore, [t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends. . . . Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Davis*, supra, 68 Conn. App. 798–800;

see also *State* v. *Berger*, supra, 249 Conn. 226–27; *State* v. *Bova*, 240 Conn. 210, 245–46, 690 A.2d 1370 (1997); *State* v. *Fuller*, 58 Conn. App. 567, 580, 754 A.2d 207, cert. denied, 254 Conn. 918, 759 A.2d 1026 (2000). "This court has previously recognized that [p]ossession of the drugs is sufficient for proof of the overt act in a conspiracy." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 170, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999).

The defendant mistakenly relies on *State* v. *Goodrum*, 39 Conn. App. 526, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995), in which this court concluded that there was insufficient evidence for the jury to be able to find the necessary agreement for a conspiracy because the jury could only speculate, not draw inferences, from the evidence. Id., 540–41. In this case, after carefully reviewing the evidence adduced at trial, however, and in the light most favorable to sustaining the verdict, we conclude that there was ample evidence, direct and circumstantial, to prove beyond a reasonable doubt that the defendant knowingly entered into a conspiracy to possess a narcotic substance with the intent to sell.

The jury logically and reasonably could have concluded that the defendant was actively involved. The drugs were found in a car he was operating and, thus, had control over. The car's engine was running. The defendant and Ortiz were in an area notorious for drug trafficking. Ortiz was a known drug addict. The powder cocaine was in the front seat, and the crack cocaine and marijuana were in the ashtray, noticeable by all in close proximity. There was no drug paraphernalia. The quantity and variety of drugs was consistent with the general quantity for sale and not personal possession. Finally, the defendant and Ortiz attempted to evade the police. The jury could have reasonably inferred from all of those factors that an agreement had been made

between Ortiz and the defendant, that the defendant had dominion or control over the narcotic substances and knowledge of their presence and character, and that the defendant had taken the aforementioned overt actions to further the conspiracy.

B

The second count of the four count information alleged possession of a narcotic substance with the intent to sell in violation of § 21a-278 (a). The defendant argues that the state offered insufficient evidence to uphold the conviction that he actually possessed the crack cocaine. We are not persuaded.

"[T]o prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it. . . . Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 256–57, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

In the present case, the jury reasonably could have inferred from the defendant's actions that he possessed the crack cocaine. The drugs were found in the vehicle, which belonged to the defendant's uncle, the defendant was operating the car, the car was parked with the engine running and when the defendant saw the police, he drove away. The defendant's behavior indicated a

consciousness of guilt. See id., 258. On the basis of the cumulative effect of the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant was in constructive possession of the narcotics that the officers found in the car.[12]

## C

The third count of the four count information alleged possession of a narcotic substance with the intent to sell in violation of § 21a-277 (a). The defendant's final sufficiency claim is that the jury reasonably could not infer that the powder cocaine was for sale and not for personal use. We disagree.

"Proof of intent is usually established through circumstantial evidence, from which the jury may draw reasonable and logical inferences. . . . The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell." (Internal quotation marks omitted.) Id., 258–59.

In the present case, the state presented sufficient evidence to support the inference that the defendant intended to sell the powder cocaine. The defendant was arrested in a neighborhood particularly known for its high level of narcotics transactions. At the time of his arrest, the defendant constructively possessed the powder cocaine, weighing 0.55 grams. The state's expert witness, Officer Harold Seltzer, testified that this quantity of powder cocaine is consistent with street level

[12] The foregoing analysis applies with equal force to the defendant's claim that the evidence was insufficient to establish that he was in possession of the powder cocaine.

narcotics sales and is indicative of the defendant's intent to sell the narcotics.[13] Additionally, the powder cocaine was packaged in a manner consistent with the sale of drugs, and no drug paraphernalia was found in the defendant's possession or in the car.

We conclude that from the cumulative evidence presented and the reasonable inferences drawn therefrom, the jury reasonably could have determined that the defendant possessed powder cocaine with the intent to sell.

## IV

Next, the defendant claims that the court abused its discretion by denying his motion for a new trial after not allowing him to present evidence of (1) his coconspirator's prior criminal conviction and (2) his coconspirator's medical records. The defendant argues that the evidence was admissible to prove his theory of defense, primarily, that it was his coconspirator, Ortiz, who was in possession of the drugs, and that Ortiz had even attempted to destroy the evidence. We agree with the court's rulings on both counts.

Our analysis is based on well established principles of law. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evi-

---

[13] "Possession of narcotics in quantities ordinarily not associated with personal use is a factor on which a jury reasonably may rely to infer intent to sell. . . . Our courts, however, have stopped short of declaring that this factor alone warrants an inference of intent. . . . Evidence further established that the defendant . . . did not carry any drug paraphernalia. It would be reasonable to infer that had the defendant intended to use the [powder cocaine] he would have carried paraphernalia. Thus the jury reasonably could have factored this evidence into its determination of whether the defendant intended to sell [powder cocaine]." (Citations omitted.) *State* v. *Conley*, 31 Conn. App. 548, 560, 627 A.2d 436, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993).

dentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Dehaney*, 261 Conn. 336, 354–55, 803 A.2d 267 (2002).

A

First, the defendant claims that the court improperly precluded him from presenting evidence of Ortiz's prior criminal conviction to impeach a state's witness and to show Ortiz's possession of the cocaine that was seized from the car. The court, however, properly found that the evidence was irrelevant.

During the trial, Jackson testified for the state that prior to the arrest of the defendant and Ortiz, he was aware that Ortiz was a drug addict (crack smoker). During cross-examination by defense counsel, Jackson denied having any knowledge that Ortiz was a convicted drug dealer. After the defendant took the witness stand, defense counsel made an offer of proof that the defendant did not know of Ortiz's drug addiction or his conviction for dealing drugs. Defense counsel offered a certified copy of a February 2, 1999 proceeding in which Ortiz had pleaded guilty to possession of narcotics with intent to sell to show that, as with Jackson, the defendant lacked actual knowledge of Ortiz's past conviction and to show the likelihood that the drugs found belonged to Ortiz. The court, after reviewing the cases submitted by the defendant in support of his motion, disagreed with the defendant, finding that the prior conviction's prejudicial effect outweighed its probative value. Nevertheless, the court did permit the defendant

to testify that he had no prior knowledge of Ortiz's addiction.

Unlike the facts presented in *State v. Amaral*, 179 Conn. 239, 425 A.2d 1293 (1979), on which the defendant relied at trial, the evidence was not offered to impeach someone's credibility, and the person with the prior conviction did not testify and is not a party in this proceeding.[14] In this case, the defendant sought to introduce the prior conviction to bolster his testimony that because Jackson did not know about the conviction, it was more likely that the defendant was unaware of it as well. The proffered evidence was not relevant and would have been more prejudicial than probative. As the court stated, "[t]he jur[ors are] the fact finder[s]. They make their own determination, and it stands for what it is already." After reviewing the record and transcripts, we cannot conclude that the court abused its discretion. Furthermore, the defendant has failed to prove substantial prejudice or injustice in light of the fact that the court allowed him to present evidence that he was unaware of Ortiz's drug addiction.

## B

Second, the defendant claims that the court failed to permit him to present evidence of Ortiz's medical records concerning Ortiz's hospital visit on June 17, 1999, so as to show Ortiz's intent to possess the cocaine that was seized from the car. The defendant hoped that

---

[14] It appears, from the defendant's brief and oral arguments, that the main purpose underlying the defendant's offering the evidence was to show Ortiz's propensity for committing crimes of this nature and the probability that the drugs belonged to Ortiz. The court, however, recognized that Ortiz was not on trial in this case and had not testified. Furthermore, prior misconduct evidence generally is inadmissible when offered to prove a person's bad character or criminal tendencies, and courts will not admit that evidence unless it is relevant and nonprejudicial. See *State v. Santiago*, 224 Conn. 325, 338, 618 A.2d 32 (1992); *State v. Morgan*, 70 Conn. App. 255, 271–74, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

by admitting the records, he could confirm that Ortiz had swallowed some of the cocaine and, at the same time, support his theory that the drugs belonged exclusively to Ortiz. We agree with the court that the proffered evidence was cumulative.

The following additional facts are necessary to resolve the defendant's claim. During cross-examination, defense counsel attempted to elicit testimony from the officers that Ortiz had swallowed some powder cocaine, became ill and was transported to the hospital. Jackson testified that Ortiz did not complain that he was feeling ill and did not make any noises when arrested. Jones also testified that Ortiz did not attempt to swallow anything while being arrested and did not have any drugs on his person. The defendant testified that he heard Ortiz choking, heard the officers demand that Ortiz "spit it out, spit it out," and noticed that Jones had to hold Ortiz upright in the car. The defendant subsequently proffered Ortiz's medical records to be admitted into evidence. The court examined the records, found the information cumulative and excluded the proffered evidence.

The defendant then called Jones back to the witness stand. Jones testified that although Ortiz had informed him that he had swallowed powder cocaine and was suffering from abdominal distress, and that although Ortiz had been taken to the hospital, he did not believe Ortiz. He never saw Ortiz ingest the cocaine, and no drug residue was visible on Ortiz's lips or mouth. The defendant then renewed his claim that the hospital records were admissible. The court ruled that the records contained confidential information and that such information merely was cumulative of the testimony already heard. The court, however, did allow into evidence a stipulation that at 2:20 p.m. on June 17, 1999, Ortiz was transported to the hospital by ambulance and

struck Jones' opinion testimony as to his disbelief of Ortiz's medical complaint.

"The trial court must make available to the defendant only that material that it concludes is clearly material and relevant to the issue involved. . . . The linchpin of the determination of . . . access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . ." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 670, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

In this case, the court reviewed the defendant's arguments in support of admitting the proffered evidence and properly held that it was inadmissible. The court weighed the competing interests and determined that the information contained in Ortiz's medical records was merely cumulative and also was confidential. The information already had been presented to the jury through Jones' testimony, and the defendant was not attempting to present any new evidence. In addition, Ortiz was not a witness and did not testify. Further, the court struck that portion of Jones' testimony that he did not believe Ortiz and allowed the defendant to put into evidence the fact that an ambulance did take Ortiz to the hospital on June 17, 1999. It was the jury's choice to decide who to believe. Accordingly, the court did not abuse its discretion in refusing to admit Ortiz's medical records into evidence.

V

The defendant's final claim is that the court committed reversible error by excluding extrinsic evidence that several of the arresting officers allegedly harassed the defendant after his probable cause hearing, but prior to trial, in violation of his constitutional rights to con-

frontation and to present a defense as guaranteed by the sixth amendment to the United States constitution and made applicable to state prosecutions by incorporation through the fourteenth amendment to the United States constitution.[15] The defendant claims that certain testimony would have demonstrated that the officers were biased and prejudiced against him. We disagree.

The defendant made an offer of proof that sometime after his probable cause hearing, but prior to trial, Jones, Smith and an unidentified officer approached him while he was attempting to change a flat tire. The defendant stated that the officers searched him and the car, and then began to make fun of him for representing himself at the probable cause hearing. The officers allegedly challenged the defendant to prove them wrong and to "get a good lawyer so . . . you can beat us" at trial. The defendant offered that testimony to show the officers' alleged motive and their alleged bias against him. The court held that the proffered testimony did not relate to the issue of bias and was not relevant because the only question the jury had to decide was whether the defendant was in possession of the narcotic substances, and such occurrences after his arrest had no bearing on the circumstances surrounding the arrest. Furthermore, allowing the proffered testimony would have provided the jury with information concerning the defendant's condition of release, which is inappropriate and prejudicial.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important func-

---

[15] The defendant appeals only on federal constitutional grounds, not on the ground that rights guaranteed to him under our state constitution were violated.

tion of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest; proof of the main facts is a matter of right but the extent of the proof of details lies in the court's discretion. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Nonetheless, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted [impeachment]. . . . Only relevant evidence may be elicited through [impeachment]. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Citations omitted; internal quotation marks omitted.) *State* v. *Abernathy*, 72 Conn. App. 831, 836–38, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in

determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citation omitted; internal quotation marks omitted.) *State* v. *Bova,* supra, 240 Conn. 219–20; see *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

Furthermore, the sixth amendment to the "federal constitution [also] require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta,* 260 Conn. 251, 260–61, 796 A.2d 1176 (2002).

The defendant claims that the conversation with the officers was highly probative of bias and motive. Although bias may be inferred from the event, the court properly concluded that the defendant had failed to establish a sufficient basis for his claim. "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." (Internal quotation marks omitted.) *State* v. *Crowley,* 22 Conn. App. 557, 560, 578 A.2d 157 (evidence of officer's dislike for defendant found irrelevant), cert. denied, 216 Conn. 816, 580 A.2d 62 (1990).

The relationship or conversation between the defendant and the police did not occur until after his arrest. In view of the fact that the question the jury had to decide was whether the officers were biased when

arresting the defendant, such extrinsic evidence was not probative and was irrelevant considering that the alleged conversation occurred after the arrest and the probable cause hearing. Also, the defendant was provided ample time to cross-examine the officers rigorously and to challenge their credibility as well as to elicit testimony that they were acquainted with him from past experiences. If the court had admitted the evidence proffered by the defendant, the result would have been jury distraction and confusion. The court, therefore, did not abuse its discretion by not admitting the defendant's extrinsic evidence and did not violate his sixth amendment rights to confrontation and to present a defense.

The judgment is affirmed.

In this opinion the other judges concurred.