## STATE OF CONNECTICUT *v.* BOONE SYNAKORN
## (15265)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued November 7—officially released December 10, 1996

*Robert G. Golger*, with whom, on the brief, was *Howard T. Owens, Jr.*, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Donald A. Browne*, state's attorney, for the appellee (state).

KATZ, J. The defendant, Boone Synakorn, was found guilty by a jury of the crimes of possession with intent to sell at least one-half gram of cocaine in free-base form in violation of General Statutes § 21a-278 (a),[1] possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b)[2] and possession of

---

[1] General Statutes § 21a-278 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as

cocaine with intent to sell within 1000 feet of a public school in violation of General Statutes (Rev. to 1991) § 21a-278a (b).[3] The defendant appeals from the judgment of conviction directly to this court in accordance with General Statutes § 51-199 (b) (3). The defendant claims that: (1) § 21a-278 (a) violates the equal protection provisions of the state and federal constitutions and, therefore, his conviction of that offense should have been set aside; and (2) there was insufficient evidence to support his conviction of possession of marijuana with intent to sell. We are not persuaded by either claim.

The jury reasonably could have found the following facts. Pursuant to a search warrant, on February 21, 1992, state and local law enforcement officials executed a search of an apartment in Bridgeport that the defendant shared with Mary Dudac and Sean Lay.[4] During the course of that search, the police seized a black duffel bag and a paper bag from a living room closet. Inside

authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[4] General Statutes (Rev. to 1991) § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school."

[4] Both Dudac and Lay pleaded guilty to charges related to the search and testified against the defendant at his trial.

these bags police found 6002 vials containing a substance that appeared to be crack cocaine. The contents of two of the vials were field-tested and showed a positive reaction for cocaine. The total weight of the contents of all the vials was 443.21 grams, or approximately 14.223 ounces.[5] Subsequently, fifteen of the 6002 vials were tested at the Connecticut department of health and addiction services. The contents were found to weigh a total of 1.07 grams, 0.92 grams of which was pure cocaine.[6] The evidence officer who participated in the search, Detective Esther Ramos of the Bridgeport police department, testified that the cocaine was packaged in the vials for street sale.

While searching the kitchen cabinets, a police officer found a metal tin that contained a plastic bag filled with a plant-like substance. Another, larger, plastic bag found with the tin contained twenty-five small "ziplock" bags containing a plant-like substance that appeared to be marijuana. The total weight of the ziplock bags was 658 grams. Ramos conducted two field tests on the plant-like substance found in the kitchen, one at the apartment and the other at the police station. Both tests evidenced a positive reaction for marijuana. Ramos further testified that the marijuana had been packaged for street sale. A search of Dudac's clothing revealed additional marijuana. Although none of the marijuana itself was offered as evidence at trial,[7] photographs of the tin container, the plastic bags and the plant-like material were presented as evidence by the state and testified to by Ramos.

The defendant's two housemates provided the police with statements that the black duffel bag belonged to

[5] According to Webster's Third New International Dictionary, 28.349 grams are equal to one ounce.

[6] Fourteen of the tested vials had been recovered from the duffel bag and one from the paper bag.

[7] Apparently, the marijuana had been misplaced after it had been confiscated by the police and was not available at trial.

the defendant. Additionally, Dudac testified at trial that she had seen the defendant place the duffel bag in the closet where it was later found by the police.

Following his conviction of the three crimes with which he was charged, the defendant moved for a new trial pursuant to Practice Book § 902[8] claiming, inter alia, that § 21a-278 (a) violates the state and federal equal protection and due process clauses because there is no rational basis for providing the same penalty for possession of one-half gram of free-base, or crack, cocaine as for possession of one ounce of powder cocaine. The trial court initially concluded that it lacked authority to rule on the defendant's motion but, at the defendant's insistence, allowed him to make an offer of proof in order to establish a record for appeal. The defendant offered the testimony of John Paul Morgan, a professor of pharmacology at the City University of New York Medical School. Morgan testified as to the differences, both physical and chemical, between cocaine in powder form and free-base cocaine.[9] He stated that the essential difference between free-base and powder cocaine is that free-base cocaine volatilizes

[8] Practice Book § 902 provides: "Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him or her.

"If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

[9] Morgan testified that "crack" is an inferior form of free-base cocaine, probably referred to as such because of the crackling sound produced when it is smoked.

at a much lower temperature than does powder and thus may be smoked. When asked about the different effects the various forms of cocaine might have on the human body, he replied that there was no essential difference but that any apparent difference in effect would be due to how the cocaine was "delivered." According to Morgan, cocaine that is injected or smoked has a more immediate effect than that which is inhaled or ingested. Consequently, a smaller dose may be more effective if injected or smoked than a larger dose that is snorted. In other words, a cocaine user who smoked the drug rather than snorted it could achieve a more rapid "high" from a smaller, less expensive dose. Morgan suggested that this economic difference was a substantial factor in the popularity of cocaine in free-base form. He further stated that, in his opinion, there was no difference between the powder and free-base forms of cocaine in terms of their overall effect on the body and that the dangers associated with the use of either form were equivalent.

Following the defendant's offer of proof, the trial court stated that the defendant did not appear to have met his burden of proving the unconstitutionality of the statute beyond a reasonable doubt. Because, however, the issue had not been properly preserved, the trial court declined to rule on the constitutionality of the statute. This appeal followed. Further facts will be provided as warranted.

I

The defendant's first claim is that the trial court improperly failed to set aside the judgment of conviction under § 21a-278 (a) because that statute violates his equal protection rights under the state and federal constitutions. Specifically, he claims that there is no rational basis for the disparate sentencing provisions

of § 21a-278 (a), which provides the same penalty for possession with intent to sell one-half gram of cocaine in free-base form as it does for possession with intent to sell one ounce or more of powder cocaine. In response, the state argues that: (1) this court should decline to decide the constitutional issue because it was improperly raised posttrial by way of a motion for a new trial pursuant to Practice Book § 902; (2) this court should refrain from deciding the constitutional issue because the defendant possessed more than 400 grams of crack cocaine, well over one ounce; and (3) if it does reach the merits, this court should uphold the constitutionality of § 21a-278 (a) by following the overwhelming number of federal courts that have found a rational basis for federal legislation that provides disparate sentencing similar to that provided by § 21a-278 (a).[10] We agree with the state that the defendant's failure to raise this issue prior to trial deprived him of the opportunity to raise the claim in posttrial proceedings.

The disposition of the defendant's constitutional claim is controlled by Practice Book §§ 810, 815 and 902. Section 815 provides in pertinent part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . . (8) Claim that the law defining the offense charged is unconstitutional . . . ." Section 810 provides that the "[f]ailure by a party, at or within the time provided by these rules, to raise defenses or objections or to make requests that must be made prior to trial shall constitute a waiver thereof, but a judicial authority, for good cause shown, may grant relief from such waiver

---

[10] The parties agree that the defendant has the burden of proving the unconstitutionality of § 21a-278 (a) beyond a reasonable doubt; *State* v. *Hernandez*, 204 Conn. 377, 385, 528 A.2d 794 (1987); and that a rational basis review is the appropriate standard. *State* v. *Reed*, 192 Conn. 520, 531, 473 A.2d 775 (1984).

. . . ." The defendant failed to attack the constitutionality of § 21a-278 (a) by way of a motion to dismiss as required by § 815 (8). Without a demonstration of good cause for such failure, § 810 dictates that his claim that the statute is unconstitutional is waived. *State* v. *Vincent*, 194 Conn. 198, 201–202, 479 A.2d 237 (1984).

The fact that the trial court allowed the defendant to call a witness does not constitute relief from the waiver. The trial court allowed the defendant to present Morgan's testimony solely as an offer of proof in support of the defendant's claim. Although the state cross-examined Morgan, and the defendant argued the merits of his position, the trial court concluded that "the issue under [§] 902 is not properly before the court. Therefore, the court does not have any need to rule on it. What I have allowed you to do is make an offer of proof that you can do with as you please. I did not want to deny that. After all, you brought this gentleman down from New York, and I saw no reason why this should not be done."[11] The trial court never found, and indeed was never asked to find, that the defendant had demonstrated good cause for his failure timely to raise his claim pursuant to a motion to dismiss under § 815 (8). Consequently, pursuant to § 810, the claim was waived.[12]

---

[11] The trial court added that had it been in a position to decide the issue, it would have found that the defendant had failed to meet his burden of proof.

[12] On appeal, the defendant offered no explanation for the tardiness of his motion at trial. Indeed, he makes no excuse for the procedural default and briefs the issue as though the trial court had considered the claim on its merits. At oral argument, the defendant asked that we review the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In this case, the trial court properly determined that Practice Book § 902 was confined to errors made in the course of the trial and that the motion for a new trial was not properly before the court. See our previous discussion of this matter. Although the defendant made an offer of proof, it was clear that the trial court did not invite the state to respond to the claim on the merits and offer its own expert evidence to support the sentencing distinction under attack. Consequently, the record is not adequate for review. Id., 240.

Moreover, because the purpose of a hearing on a § 902 motion for a new trial is to determine whether the court, in the course of the trial, committed error and thereby deprived the defendant of a fair trial, the trial court could not properly decide the issue before it. "Section 902 contemplates *court error* of such magnitude as to deprive the defendant of a fair trial and in the use of the term 'shall grant the motion' mandates a new trial if such error exists. The trial court was never asked to rule on the [claim] asserted by the defendant in his postverdict motion for a new trial and therefore could not have committed an error based on the defendant's postverdict § 902 motion." (Emphasis added.) *State* v. *Curley*, 25 Conn. App. 318, 330, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991); see also *State* v. *Jones*, 205 Conn. 723, 729–30, 535 A.2d 808 (1988). Because the defendant's claim did not allege an error made in the course of the trial, a motion for a new trial pursuant to § 902 was not the proper vehicle by which to pursue the claim. Accordingly, pursuant to §§ 810, 815 and 902, the defendant's failure at the trial court level properly to raise and pursue the claim that § 21a-278 (a) is unconstitutional precludes further review of that claim.

## II

The defendant's second claim on appeal is that the evidence presented at trial as to his possession of marijuana was insufficient to support the jury's finding of guilt under § 21a-277 (b).[13] We disagree.

"In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the

[13] See footnote 2.

cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 257–58, 681 A.2d 922 (1996).

In this case, Ramos, the police officer in charge of seizing evidence discovered during the search, testified that the investigating officers who searched the kitchen had found a plant-like substance that she identified as marijuana. Ramos further testified that this substance was packaged as if for sale. In addition to this testimony, the state offered into evidence photographs of the kitchen, the cabinets and containers in which the plastic bags were found and the bags themselves. The defendant claims that because the plant-like substance itself was not offered into evidence, the jury reasonably and legally could not have found that the defendant possessed and intended to sell marijuana. We disagree.

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . *State* v. *Hart*, 198 Conn. 424, 427, 503 A.2d 588 (1986)." (Internal quotation marks omitted.) *State* v. *Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995). Ramos testified that she had served for nine years in the Bridgeport police department's drug unit. The jurors reasonably could have found that, on the basis of her experience and the results of the field tests, Ramos had correctly identified the plant-like substance found in the kitchen as marijuana packaged for sale.

Despite the fact that Ramos' testimony about the field test directly followed her testimony as to the discovery of the marijuana in the kitchen, the defendant argues that there is nevertheless some question as to whether the material tested actually came from the kitchen or from Dudac's clothing. We are not persuaded. "In viewing evidence that could yield contrary inferences, the fact finder is not required to draw only those inferences consistent with innocence, but may draw whatever inferences from the evidence it deems to be reasonable and logical." *State* v. *Bruno*, 236 Conn. 514, 539, 673 A.2d 1117 (1996).

The judgment is affirmed.

In this opinion the other justices concurred.