## STATE OF CONNECTICUT *v.* THADDEUS SINGLETON
### (AC 22906)

Flynn, Mihalakos and McDonald, Js.

Argued May 7, 2003—officially released February 3, 2004

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *David Zagaja*, assistant state's attorney, and *Proloy K. Das*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Thaddeus Singleton, appeals from the judgments of the trial court, rendered after a hearing, finding him in violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the state did not meet its burden of establishing the violation of probation. We agree.

General Statutes § 53a-32 (b) requires that a violation of probation be "established by the introduction of reliable and probative evidence." In *State* v. *Davis*, 229 Conn. 285, 290–91, 641 A.2d 370 (1994), our Supreme Court held that a fair preponderance of the evidence is the standard of proof required for a violation rather than that of "reasonable satisfaction." Id., 295. In so doing, our Supreme Court reversed this court's judgment in *State* v. *Davis*, 29 Conn. App. 801, 618 A.2d 557 (1993). The Supreme Court adopted the fair preponderance standard because, among other reasons, "both society and the probationer share an interest in a successful rehabilitative process, the state, as well as the probationer, has an interest in a *reliable* determination of whether probation has been violated." (Emphasis in original.) *State* v. *Davis*, 229 Conn. 296–97. The *Davis* court also quoted from *Gagnon* v. *Scarpelli*, 411 U.S. 778, 785, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), that "[b]oth the probationer . . . and the State have inter-

ests in the *accurate* finding of fact" in probation revocation proceedings. (Emphasis added; internal quotation marks omitted.) *State* v. *Davis*, supra, 229 Conn. 297.

The issue in this case is whether there was sufficient reliable evidence for the court to conclude that the defendant possessed crack cocaine and thereby violated his probation. We examine the cumulative effect of the evidence presented at the hearing construed in the light most favorable to sustaining the court's finding. See *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

There was evidence before the court that in 1998, the defendant was convicted of numerous felonies. On May 12, 1998, the defendant was sentenced on all charges to a total effective term of eight years imprisonment, execution suspended after three years, and three years of probation. The defendant was released from prison on February 19, 2001, at which time he was placed on probation for a period of three years. One condition of the defendant's probation was that he not violate any criminal law of the state of Connecticut.

At the hearing, Corporal Timothy Mullaney of the Plainville police department testified that during the early morning hours on June 4, 2001, he was on patrol in the area of Camp Street in Plainville when he noticed a vehicle enter the parking lot of a closed factory. Mullaney followed the vehicle and observed that there were three individuals in the vehicle and that all of the vehicle's lights had been shut off. At that time, Mullaney approached the vehicle.

Mullaney then requested that the individual sitting in the front passenger seat roll down the window so that Mullaney could speak with the vehicle's occupants. When the passenger complied with the request, Mullaney detected the odor of marijuana. At that point, Mullaney called for additional police units.

When a backup officer arrived, Mullaney had the defendant step out of the vehicle to conduct a patdown. At that time, another officer discovered a clear plastic package containing a substance in the backseat of the vehicle. Mullaney performed a field test on the package's substance, which indicated a positive result for crack cocaine. The police also found a clear plastic bag on the floor of the front passenger's seat containing a leafy substance that appeared to be marijuana.

The police also found two cellular telephones in the vehicle. In the search of the vehicle, one of those cellular telephones rang and Mullaney answered. The caller asked Mullaney if he could buy an "8 ball." Mullaney testified that "8 ball" is a term used to describe a certain quantity of cocaine. The police did not establish who owned the cellular telephones.

The defendant was then placed under arrest and transported to police headquarters. There, Mullaney conducted a body search of the defendant and found a second clear plastic package containing a substance in the cleft of the defendant's buttocks. Mullaney performed a field test on the contents of the plastic package, which indicated a positive result for crack cocaine.

Mullaney, who had one week's training in the field investigation of narcotics, testified that the clear plastic bag hidden on the defendant's person appeared to be a "bindle," a clear plastic bag utilized to contain crack cocaine. The substance, which Mullaney did not describe, was field tested for crack cocaine, a narcotic drug. That reagent field test was positive for crack cocaine. The field test, as described by Mullaney, consisted of a small plastic tube with caplets of different chemicals, which are broken and shaken together in the tube. The suspected narcotic substance also is to be put into the tube. Depending on the reagent used, Mullaney testified, the suspected narcotic would turn

a specific color. Mullaney did not testify as to the identity or reliability of the field test.

Mullaney testified that he never submitted the suspected substance to a laboratory for analysis. No laboratory analysis of the substance was presented at the hearing, although the substance in the plastic bags was introduced into evidence. Mullaney also testified that he had received training in utilizing field drug tests, but he gave no evidence as to the nature of his training or its use while performing the field tests.

At the conclusion of the evidence, the state argued that it had established that the defendant illegally had possessed a narcotic and that he had possessed a narcotic with the intent to sell. The defendant challenged the state's contention that a field test was sufficient evidence to support a finding that a substance was a narcotic.

In its decision, the court stated: "I think it's more likely than not that the substance seized from the defendant was narcotics, crack cocaine. The field test indicated it, and there was no indication that the field test was not working properly. But there are other circumstantial factors that corroborate the field test results. The defendant was in the presence of two other individuals from whom or from nearby whom drugs were also seized. There was the smell of marijuana that the officer observed when the window began to open. That confirms that these individuals were here for the purpose of drug use or possibly distribution.

"In addition, there was the [cellular] phone call with a person seeking to buy an '8 ball,' which confirms, again, what was going on here involved drugs and, finally, that the location that this particular item was found, in the cleft of the defendant's buttocks, is highly corroborative of the results of the field test. It's hard to imagine anything else being concealed there except

something that the defendant wanted to hide from law enforcement authorities. So, I believe that, more probably than not, that the defendant was in possession of a controlled substance." The court then found that the defendant had violated the terms of his probation because he illegally had possessed a controlled substance, crack cocaine, and added that it was not necessary to find that he had an intent to sell the crack cocaine.

Essential to the court's finding by a fair preponderance of the evidence that the defendant illegally had possessed crack cocaine was the result of the field tests that Mullaney performed on the substance found on the defendant. The basis of the violation of probation was that the defendant illegally had possessed narcotics, a criminal offense, and the illicit nature of the substance was an element of that criminal offense. See General Statutes § 21a-279 (a).

In this case, an unknown substance that appears in the exhibits as small tan crumbs tested positive as crack cocaine in a field narcotics test. Our Supreme Court, in considering General Statutes § 21a-278 (a), which provides for enhanced penalties for dealing in freebase cocaine, referred to "free-base, or crack, cocaine . . . ." *State* v. *Synakorn*, 239 Conn. 427, 431, 685 A.2d 1123 (1996).

"[T]he meaning of the base form of cocaine [or crack cocaine] is undisputed in the scientific community. . . . [It is] a substance which when combined with an acid produces a salt. . . . [T]he chemical formula for cocaine base is $C_{17}H_{21}NO_4$; the formula for cocaine hydrochloride—a chemical term for [powder] cocaine—is $C_{17}H_{21}NO_4HCl$. . . . [T]he two forms have different solubility levels, different melting points and different molecular weights. . . . [J]ust about any chemical laboratory would be able to distinguish the

difference between cocaine base and cocaine salt or other forms. . . . *United States* v. *Jackson*, 968 F.2d 158, 161 (2d Cir.), cert. denied, 506 U.S. 1024, 113 S. Ct. 664, 121 L. Ed. 2d 589 (1992)." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 234 n.7, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

Connecticut's enhanced penalties provision for the freebase form of cocaine is similar to federal provisions. The federal sentencing guidelines "provide a fairly precise definition of crack: [A] form of cocaine base, usually prepared by processing cocaine hydrochloride [powder cocaine] and sodium bicarbonate, and usually appearing in a lumpy, rock-like form. [U.S. Sentencing Guidelines Manual] § 2D1.1 (c) note D. That definition adequately describes crack by its telltale appearance and by the common method of its manufacture." *United States* v. *Canales*, 91 F.3d 363, 368 (2d Cir. 1996). As the United States Court of Appeals for the Second Circuit has stated: "To be sure, crack cocaine is one form of cocaine base." Id., 367.

In *United States* v. *Martinez*, 144 F.3d 189, 190 (1st Cir. 1998), the United States Court of Appeals for the First Circuit described the proper method to establish whether a substance is in fact crack cocaine. There, the court stated that "once the government laid a proper foundation by introducing a chemical analysis . . . proving that, chemically, the contraband was cocaine base," a qualified lay opinion that the substance is the crack form of cocaine based on its appearance and texture may be admissible because "[c]hemical analysis cannot distinguish crack from any other form of cocaine base because crack and all other forms of cocaine base are identical at the molecular level." (Internal quotation marks omitted.) Id.

In this case, there was no evidence as to the identity and reliability of the field test. The only reference to

the identity of the field test at the hearing was a statement by the defendant's counsel during closing argument, which is not evidence. The test was described by counsel as a "narcotic thirteen" field test.[1] In *Weaver v. State*, 543 So. 2d 443, 444 (Fla. App. 1989), the Florida District Court of Appeal held that a positive heroin field test of unknown reliability was not sufficient to find a violation of probation. Our Supreme Court in *Davis* noted that Florida utilizes the preponderance of the evidence standard in determining if an individual has violated the terms of his probation. *State* v. *Davis*, supra, 229 Conn. 298–99 n.12. As in this case, the field test in *Weaver* was not identified or shown to be reliable. In this case, as in *Weaver*, the substance was not identified as a narcotic by smell, taste or touch.

Furthermore, the literature reveals that field tests are not designed or marketed for qualitative analysis of suspected narcotics.

Matt Johnson, a narcotics investigator who has taught numerous narcotics field test seminars nationwide, has written that a blue presence after applying cobalt to the tested substance, indicating a positive field test reaction for crack cocaine, occurs not only with crack cocaine, but also with several other nonillicit substances, such as Benadril. M. Johnson, "Narcotic Field Testing," Law & Order (June, 2003).

The manufacturer of the "Nark Reagent No. 13" presumptive test for crack cocaine states in its catalog: "Presumptive identification is generally recognized within our legal system as a component of probable cause. There is no drug identification system presently in use which completely eliminates the occurrence of false positives and false negatives. A forensic laboratory

---

[1] Mullaney's police report, submitted with the application for the violation of probation arrest warrant, which also was not in evidence, referred to the test as a "Nark #13 test."

is required to qualitatively identify an unknown substance." Sirchie Finger Print Laboratories On-Line Catalog at http://www.gsa-sales.com/sirchie/sir-18-19.htm. In its spring, 1999 newsletter, ODV, Inc., another manufacturer of field tests, also states that "field tests are designed to confirm your probable cause evidence." See http://www.ODVINC.com.

There was also no evidence as to the nature of Mullaney's training and the use of that training in conducting the field tests in this case. Johnson cautions that officers should be trained to perform the field test exactly as prescribed to avoid being misled by a false positive. M. Johnson, supra, Law & Order. ODV, Inc., counsels in a similar vein in its spring, 1997 newsletter. See http://www.ODVINC.com.

We reject the position advocated by the state that the officer's field test in this case was sufficient proof by a preponderance of the evidence that the substance contained illegal narcotics. Although there were facts to support probable cause, we conclude that there was not reliable evidence to support a finding by a fair preponderance of the evidence that the hidden substance was in fact crack cocaine, a narcotic drug. Probable cause has been defined as existing when there are reasonable grounds to believe an offense has been committed. *State* v. *Jeffreys*, 78 Conn. App. 659, 663, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). The United States Supreme Court in *Morrissey* v. *Brewer*, 408 U.S. 471, 488, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), specifically concluded that constitutional due process mandates a formal revocation hearing that "must be the basis for more than determining probable cause . . . ." See *State* v. *Davis*, supra, 29 Conn. App. 815 (*Freedman, J.*, dissenting).

The state cites several cases in support of its position: *State* v. *Synakorn*, supra, 239 Conn. 427; *State* v. *Wil-*

*liams*, 169 Conn. 322, 363 A.2d 72 (1975); and *State* v. *Lee*, 53 Conn. App. 690, 734 A.2d 136 (1999).

*State* v. *Synakorn*, supra, 239 Conn. 435–36, involved, in part, a prosecution for possession of marijuana. The defendant argued that the state had offered insufficient evidence to prove that the plant like substance he possessed was marijuana. Id., 435. Our Supreme Court concluded that the evidence was sufficient to support a finding that the defendant possessed marijuana in the absence of the plant material being introduced into evidence. Id., 436. In *Synakorn*, the evidence in support of that finding, however, went beyond the police officer's field test of the substance. The court also had evidence of the police officer's experience as well as evidence that the plant "appeared to be marijuana." Id., 430. We recognize that marijuana has a distinctive appearance that could be identified by an experienced police officer. There was no testimony in this case that would suggest that an officer could reliably identify a substance as crack cocaine by its appearance and concealment without a showing that it was chemically cocaine base.

In *State* v. *Williams*, supra, 169 Conn. 322, our Supreme Court determined that it was not an abuse of discretion for the trial court to allow a police officer to testify as to the purpose and results of field tests that were performed. Id., 332–33. That case involved an evidentiary ruling and not a question of the sufficiency of the evidence. See id. The court's evidentiary ruling, moreover, even if improper, "was harmless in view of the subsequent testimony of a toxicologist." Id., 333.

Finally, in *State* v. *Lee*, supra, 53 Conn. App. 694, a field test was performed by the police, but the issue presented to this court was whether there was sufficient indicia of constructive possession to support the defen-

dant's conviction. We did not address the issue of whether an officer's field test was reliable evidence to establish that an unknown substance is a narcotic.

The substance that the defendant possessed was readily available for a laboratory analysis to determine whether it in fact contained cocaine, a narcotic. After such testing, the true nature of the unknown substance could have been determined and served as a reliable basis to find, by a fair preponderance of the evidence, that the defendant illegally had possessed narcotics.[2] In the absence of reliable evidence as to the illicit nature of that substance, we must reverse the judgments of the trial court.

The judgments are reversed and the case is remanded with direction render judgments that the defendant was not in violation of the terms of his probation.

In this opinion the other judges concurred.

---

[2] If reliable evidence that the substance was the base form of cocaine was introduced, qualified police testimony could have been admitted into evidence that the substance, by its appearance and texture, was crack cocaine.