NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3834-17T4

KEVIN BLANCHARD,

       Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 29, 2019**
>
> **APPELLATE DIVISION**

Submitted September 23, 2019 – Decided October 29, 2019

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the New Jersey Department of Corrections.

Kevin Blanchard, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Tasha Marie Bradt, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

In this Department of Corrections disciplinary appeal, we hold that the Department acted arbitrarily, capriciously or unreasonably in denying a

confirmatory laboratory test of a powder, seized from the inmate, which a field test indicated contained cocaine. We reach this conclusion in light of the field test's inherent limitations; the lack of other direct or circumstantial evidence that the inmate possessed drugs; the department's regulation compelling routine confirmatory tests of drug specimens; and the absence of any reasoned explanation for the Department's refusal to subject the seized powder to a confirmatory laboratory test.

I.

During a search of inmate Kevin Blanchard's property, a corrections officer discovered a white powdery substance in a folded or rolled piece of paper that was tucked in a paperback book. According to a special custody report, an investigator "field tested the substance which tested positive for cocaine." The test kit used was manufactured by Sirchie and labeled "07 Scott Reagent (Modified) A test for cocaine, HCl & cocaine base." A senior investigator separately wrote that "[t]he CDS is being sent to the New Jersey State Police Forensic Laboratory for conformation [sic]," but that evidently did not happen. The record contains no results or other indication of a confirmatory test.

On the basis of the field test, Blanchard was charged with asterisk offense *.203, "possession or introduction of any prohibited substances such as

drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff." See N.J.A.C. 10A:4-5.1(o)(1). Prison officials found no other evidence of drug possession. A strip search of Blanchard conducted immediately after officials seized the powder uncovered no contraband. Urine specimens he produced the day before and shortly after the seizure also yielded negative results. Officials found no contraband upon searching Blanchard's cell.

The hearing officer found the violation based on the field test results. In his administrative appeal, Blanchard insisted the field test result was a false positive. He wrote that the white powder was a generic coffee sweetener. A fellow inmate gave him the sweetener, which he poured into a cup that had remnants of Tang powder. He retained the sweetener for future use. He explained that the sweetener was sold at the canteen, but he could not easily afford it, as he earned $17 a month and received no financial help from others. Blanchard said he asked the hearing officer to send the powder to the State Police Laboratory, but the request was denied.[1]

---

[1] The adjudication form that the hearing officer prepared noted that Blanchard did not request the production of any witnesses, and presented no documents. Blanchard's counsel substitute acknowledged that on the form. However, Blanchard's request for a confirmatory test was a request to create evidence that did not yet exist.

The Assistant Superintendent affirmed the hearing officer's decision that Blanchard violated *.203 and upheld the recommended sanction. Blanchard lost 120 days of commutation time and thirty days of recreation privileges; and received 120 days of administrative segregation. The Assistant Superintendent cited only the field test for evidential support, and did not address the lack of confirmatory laboratory test results. This appeal followed.

In his pro se brief, Blanchard contends the Assistant Superintendent's finding lacked substantial credible evidence, because the Department had not established the field test's reliability. He contends the Department adopted a policy of laboratory testing urine specimens and seized narcotics because of the field test's lack of reliability. He argues that the refusal to subject the powder to confirmatory testing in his case violated departmental policy; and denied him his due process right to present exculpatory evidence. He also contends the Assistant Superintendent's decision was arbitrary, capricious and unreasonable.

The Department responds that the policy of confirmatory testing applies only to urine specimen testing, and Blanchard presented only "self-serving testimony" that the field test was unreliable. The Department argues that the field test constituted substantial credible evidence of the violation.

A-3834-17T4

II.

A.

Our standard of review is well-settled. We will disturb an agency's adjudicatory decision only upon a finding that the decision is "arbitrary, capricious or unreasonable," or is unsupported "by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). In determining whether an agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) [W]hether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Carter, 191 N.J. 474, 482 (2007) (quoting Mazza v. Bd. of Tr., 143 N.J. 22, 25 (1995)).]

Substantial evidence has been defined alternately as "such evidence as a reasonable mind might accept as adequate to support a conclusion," and "evidence furnishing a reasonable basis for the agency's action." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (citations omitted); see also N.J.A.C. 10A:4-9.15(a) (stating that "[a] finding of guilt at a

disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act").[2]

We recognize that "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). In particular, inmates' unauthorized narcotics use and possession seriously threaten prison safety and security. Hamilton v. N.J. Dep't of Corr., 366 N.J. Super. 284, 289 (App. Div. 2004). A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Carter, 191 N.J. at 483).

Yet, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision[.]" Figueroa, 414 N.J. Super. at 191. "We are constrained to engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J.

---

[2] To satisfy minimum federal due process requirements, a reviewing court need only determine that there was "some evidence" supporting a disciplinary decision to revoke good time credits. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). That is less demanding than the "substantial evidence" standard of review. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987).

85, 93 (1973)). We cannot exercise this function unless the agency provides a reasonable record and statement of its findings. Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003); Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 63 (App. Div. 1999).

B.

Applying these principles, we are persuaded that the Department's refusal to procure a laboratory test was arbitrary, capricious, or unreasonable. As a result, so is the order affirming the *.203 violation.

Before discussing the basis for that holding, we highlight what we do not decide. We do not ground our decision in federal constitutional guarantees of due process. Nor do we find that existing regulations entitled Blanchard to a confirmatory laboratory test. Nor do we hold that the field test does not suffice as substantial evidence of guilt. Avant v. Clifford, 67 N.J. 496, 530 (1975).

We reach our conclusion without addressing Blanchard's argument that constitutional due process entitled him to a confirmatory lab test, since we shall not reach a constitutional issue "unless absolutely imperative" to resolve the case. See Donadio v. Cunningham, 58 N.J. 309, 325-26 (1971) (citation omitted). Prisoners have a limited due process right "to call witnesses and present documentary evidence in their defense when such procedure will not

be unduly hazardous to institutional safety or correctional goals." See Avant, 67 N.J. at 529; see also McDonald v. Pinchak, 139 N.J. 188, 196 (1995).[3] These standards apply to "disciplinary matters which may subject an individual to 'grievous loss' by way of punishment for serious misconduct." Avant, 67 N.J. at 519 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

The New Jersey Supreme Court derived these standards not only from federal constitutional notions of due process, but also the Court's inherent power "to strike down arbitrary action and administrative abuse and to insure procedural fairness in the administrative process." Id. at 520.[4] However, it is not essential that we decide the extent to which the constitutional due process right entitles a prisoner to procure forensic analysis of evidence. But see Engel v. N.J. Dep't of Corr., 270 N.J. Super. 176, 180 (App. Div. 1994) (holding that "considerations of minimal due process" entitled prisoner to

---

[3] Consistent with these principles, agency regulations recognize a prisoner's right to call "fact witness(es) . . . and present documentary evidence" subject to enumerated exceptions. N.J.A.C. 10A:4-9.13(a). A "fact witness" is someone with personal knowledge of "the incident or aspects thereof" including an officer "who administers a test for prohibited substances" if a dispute arises about the test. N.J.A.C. 10A:4-1.3. Rather than present a document or call a witness, Blanchard asked the agency to create a document – a confirmatory laboratory report – and a fact witness – the lab technician.

[4] In view of that dual source, New Jersey procedural standards may be more expansive than those the United States Supreme Court grounded solely in the constitutional Due Process Clause of the Fourteenth Amendment in Wolff v. McDonnell, 418 U.S. 539 (1974).

polygraph test where informant against him was given one with a positive result). Rather, we apply our authority to correct arbitrary action and "to insure procedural fairness in the administrative process." Avant, 67 N.J. at 520.

We also assume, for the purposes of this decision, that agency regulations do not entitle Blanchard to a confirmatory test. Prison officials are authorized to test inmates for prohibited substances. N.J.A.C. 10A:3-5.10. "If the initial test result is positive, the specimen shall be subject to a confirmation test of equal or greater sensitivity than the initial test." N.J.A.C. 10A:3-5.11(d). The Department therefore lacks textual support for its argument that this provision applies only to urine testing. Yet, we presume the regulation is nonetheless limited to "specimens" drawn from an inmate's body, such as urine, blood, or saliva, and not substances the inmate actually or constructively possesses.[5]

---

[5] The regulation previously referred solely to the "[c]ollection, storage and analysis of urine samples." See 29 N.J.R. 362 (Jan. 21, 1997). The Department broadened testing to cover "specimens," explaining that "[t]he deletion of certain references to 'urine' represents the intent of the Department to conduct testing on other types of specimens as new technologies make advanced testing available." See 31 N.J.R. 3577(a) (Nov. 15, 1999); see also 32 N.J.R. 303 (Jan. 18, 2000) (adoption of regulation). However, as we discuss below, the presence of a confirmatory testing regime supports our conclusion that it was arbitrary, capricious or unreasonable to deny such testing under the circumstances.

We also do not decide in this case whether a field test alone would constitute substantial evidence of a violation. A fair proceeding is a prerequisite to determining whether substantial evidence supports the agency's decision. As we held in Jones v. Department of Corrections, 359 N.J. Super. 70, 75 (App. Div. 2003), "Application of the substantial evidence rule presupposes an adequate opportunity by the party against whom a decision has been rendered to have marshalled and offered evidence." The sole issue is whether, in a case with a single positive field test of unproved reliability, and no other corroborating evidence, procedural fairness compels a second, confirmatory test, to assure that the field test did not produce a false positive.

C.

To determine that the agency acted arbitrarily, capriciously, or unreasonably, we are guided by the principle enunciated in Ramirez v. Department of Corrections, 382 N.J. Super. 18, 24 (App. Div. 2005), that an inmate may be entitled to the creation of forensic evidence to assure the "fundamental fairness" of the proceeding. In Ramirez, we addressed whether a prison official arbitrarily denied a request for a polygraph. We recognized that a prisoner did not have an unqualified right to a polygraph. Id. at 23 (citing Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997)). Consistent with N.J.A.C. 10A:3-7.1, the decision to order a polygraph is

A-3834-17T4

within an administrator's discretion.  Id. at 24.  Nonetheless, that "discretion must be guided by whether the request for a polygraph if denied will impair the fundamental fairness of the disciplinary proceeding."  Ibid.

We identified various factors that would tend to show the impairment or preservation of such fundamental fairness.  "Impairment may be evidenced by inconsistencies in the [corrections officer's] statement or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf."  Ibid.  On the other hand, a polygraph would not be required to assure fundamental fairness "when there is sufficient corroborating evidence presented to negate any serious question of credibility."  Ibid.

In assessing the fundamental fairness of a proceeding to determine unauthorized narcotics possession without a confirmatory test – a proceeding that may result in such "grievous loss," see Avant, 67 N.J. at 519, as the substantial loss of commutation time and other serious sanctions – it is appropriate to consider the initial field test's reliability; the presence or absence of other direct or circumstantial evidence to corroborate the field test; the availability of a confirmatory testing regime; the reasons, if any, the Department may provide for denying a confirmatory test under the circumstances; and any other relevant factors.

1.

We turn first to the field test's reliability. If the test were proved to be scientifically reliable and rarely susceptible to false positives, then that would reduce or obviate the need for confirmatory testing. The proponent of scientific testing bears the burden to establish its general acceptance. State v. Cassidy, 235 N.J. 482, 492 (2018). The issue is not the admissibility of the field test results; the Rules of Evidence do not apply in a Corrections disciplinary hearing. N.J.R.E. 101(a)(3). But, the test's reliability is pertinent to whether the agency has provided a fundamentally fair hearing, and met its burden of proof. See Avant, 67 N.J. at 540 (recognizing that the agency bears the burden of proof).

We are unaware of any published authority of our courts – and the agency provides none – that the reagent field drug test used in this case is generally accepted in the scientific community as a reliable indicator of the presence of cocaine.[6] Rather, there is persuasive authority in other jurisdictions that, as a condition of admissibility, a drug field test must satisfy the applicable standard for scientific reliability. See Commonwealth v. Fernandez, 934 N.E.2d 810, 820-21 (Mass. 2010) (affirming decision to admit

---

[6] We address the reliability of the specific test used here. Presumably, not all field tests are created equal. Some may be more accurate and reliable than others.

results of field test for cocaine where State presented evidence of scientific reliability, albeit "weak," particularly where trial judge instructed jury about risk of false positives)[7]; Commonwealth v. Rodriguez, 94 N.E.3d 861 (Mass. App. Ct. 2018) (holding it was error to admit results of field test for heroin absent proponent establishing scientific reliability); In re Angel A., 704 N.E.2d 554, 556-57 (N.Y. 1998) (holding, in juvenile delinquency case, the presenting agency could rely on a reagent test for heroin in a preliminary proceeding, but general acceptance within the scientific community would have to be shown at trial); State v. Tate, 265 S.E.2d 223, 226 (N.C. 1980) (affirming exclusion of results of Duequenois-Levine color test for marijuana where trial judge found it was not "scientifically accepted, reliable or accurate" because it also produced positive reactions to coffee and aspirin).

Other courts have accepted a field test to establish a presumption that drugs are present, or that there is probable cause to arrest, but not, by itself, to establish actual possession because of reliability concerns.[8]  In a violation-of-

---

[7] For the reliability standard, the court referred to Commonwealth v. Lanigan, 641 N.E.2d 1342, 1349 (Mass. 1994), which accepted the standard in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[8] In another context, we have distinguished between a scientific test that may be admissible to establish probable cause, but, absent satisfaction of the Frye standard, is inadmissible as substantive proof.  See State v. Doriguzzi, 334 N.J. Super. 530, 546 (App. Div. 2000) (reversing DWI conviction because

(continued)

probation case, Connecticut's appellate court held "there were facts to support probable cause," but the court rejected the State's position that "the officer's field test . . . was sufficient proof by a preponderance of the evidence that the substance contained illegal narcotics." State v. Singleton, 840 A.2d 36, 40 (Conn. App. Ct. 2004), vacated on other grounds, 876 A.2d 1 (2005). The appellate court noted there was no evidence presented as to reliability of the test, or the training of the officer who administered the field test. Id. at 39-40. The Connecticut Supreme Court held that the field test, plus other circumstantial evidence – the defendant possessed multiple cell phones and secreted the substance in his buttocks – was sufficient to support finding the substance was cocaine. Singleton, 876 A.2d at 9. The court declined to decide "[w]hether a field test alone would be sufficient to establish, beyond a reasonable doubt, that the substance tested was crack cocaine."[9] Id. at 10.

---

(continued)

horizontal gaze nystagmus test did not yet pass muster under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), although it could be used to establish probable cause to arrest). We recognize that the Supreme Court has molded the test for admissibility of scientific tests in civil proceedings, drawing principles from Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In re Accutane Litigation, 234 N.J. 340, 387 (2018).

[9] We are unpersuaded by the Connecticut Supreme Court's reasoning that the other evidence was also sufficient to establish the field test was reliable. Singleton, 876 A.2d at 10. The corroborating evidence may demonstrate that

(continued)

Other courts have recognized limitations in the reagent test for cocaine and other field tests. See e.g., L.R. v. State, 557 So.2d 121 (Fla. Dist. Ct. App. 1990) (holding that positive field test and officer's testimony based on his experience that the substance was cocaine was insufficient to support adjudication of delinquency where the state presented no laboratory report or chemist's testimony). New York's highest court determined that a reagent test for heroin provided a sufficient evidentiary basis for a grand jury to return an indictment, but stated, "we do not hold that a defendant may be proven guilty beyond a reasonable doubt based solely on the results of a NIK field test." People v. Swamp, 646 N.E.2d 774, 778 (N.Y. 1995).

Other courts have accepted reliance on field tests, without confirmatory tests, but other corroborating evidence of a violation was presented. For example, in Cook v. Edgewood Management Corp., 825 A.2d 939 (D.C. 2003), the court affirmed an eviction based on the tenant's drug activity. The court held that the trial court properly admitted the results of a color reagent test, which local police widely used to establish probable cause. Id. at 952. The court noted that the investigator who performed the field test was "trained and certified to conduct field tests, and . . . had performed over 500 field tests by

(continued)
the test was accurate in a particular case; but that does not establish that the test is reliable in cases generally.

the time of trial." Id. at 949. The drug activity was corroborated by evidence of controlled buys by a police informant. Ibid.; see also People v. Gaston, 334 N.E.2d 823, 825 (Ill. App. Ct. 1975) (holding that unidentified cocaine field test along with observation of drug transactions proved by a preponderance of evidence that substance was a narcotic in violation of probation proceeding).

Here, the test's own manufacturer, Sirchie, noted in its product literature the test may be used to establish probable cause, but "[a] forensic laboratory is required to qualitatively identify an unknown substance." Singleton, 840 A.2d at 40 (quoting Sirchie Finer Print Laboratories On-Line Catalog). The manufacturer's warning is consistent with standards for color test reagents, like the one used here, issued by the National Institute of Justice (NIJ) of the United States Department of Justice. See Nat'l Inst. of Justice, Law Enforcement and Corrections Standards and Testing Program, Color Test Reagents/Kits for Preliminary Identification of Drugs of Abuse, NIJ Standard-0604.01 (July 2000). The federal standard refers to such reagents as tests "for the preliminary identification of drugs of abuse." Id. at 1. The standard requires tests to include "[a] statement that the kit is intended to be used for presumptive identification purposes only, and that all substances tested should be subjected to more definitive examination by qualified scientists in a properly equipped crime laboratory." Id. at 7.

In sum, the unproven reliability of the reagent test used here, plus the absence of evidence of the training or experience of the officer who performed it, support our conclusion that a confirmatory test was required to assure a fundamentally fair hearing.

2.

The absence of corroborating evidence of narcotics possession also tends to justify a confirmatory test.

The Department did not produce direct or circumstantial evidence of drug possession to supplement the field test result. Searches of Blanchard's person and his cell were fruitless. The Department presented no other witnesses who observed transactions or other indicia of drug possession. Unlike in the Connecticut case, Singleton, there was no evidence that Blanchard secreted the substance in a body orifice, which would bespeak drug possession. Although Blanchard did store the powder in folded or rolled magazine paper inside a book, he apparently possessed the book while in the mailroom, rather than secrete it where it was less susceptible to discovery. Blanchard made no self-incriminating statements. Also, the Department evidently did not attempt to identify and interview the person who, Blanchard said, gave him what he said was coffee sweetener.

As noted above, urine specimens that Blanchard gave before and after officials seized the powder from his property produced negative results for narcotics use. Although Blanchard was not charged with use, his non-use is circumstantial evidence he did not possess narcotics.

In sum, the Department's exclusive reliance on the positive field test, and the absence of any other evidence of guilt, support a confirmatory test to assure fundamental fairness.

3.

The presence of a confirmatory testing regime also tends to support the conclusion that fundamental fairness requires confirmatory testing in this case. Two inferences may be drawn from the regulatory mandate to confirm the results of initial tests of specimens. First, the Department evidently recognizes the limitation of field tests. Second, confirmatory tests are not unduly burdensome. Otherwise, we presume the Department would not routinely compel them in any case of a positive specimen test, regardless of the surrounding circumstances.

Furthermore, the record in this case reflects that at least one official in the Department intended to submit the seized powder to a laboratory for confirmatory testing. That official evidently thought the initial test should be

confirmed. However, the record does not indicate that the testing occurred, and its result.

4.

Due process and fundamental fairness require the decision-maker to set forth his or her reasoning. Avant, 67 N.J. at 524, 531-32. In finding a *.203 violation based solely on the field test results, the Assistant Superintendent provided no reasons for denying a confirmatory test in this case. As we observed in another Department of Corrections disciplinary case, essential to our deference to the agency's exercise of its expertise is a reasoned explanation for its decision. Balagun, 361 N.J. Super. at 202-03. In short, "[t]he agency is 'obliged . . . to tell us why'" it reached its result. Id. at 203 (quoting In re Valley Hosp., 240 N.J. Super. 301, 306 (App. Div. 1990)). The Assistant Superintendent provided no basis for concluding that a confirmatory laboratory test in Blanchard's case would be unduly burdensome, or would undermine security or safety. Nor has the Assistant Superintendent provided any defense of the field test's reliability, or rationale for providing confirmatory tests of specimens, but not of suspected contraband.

D.

We recognize that "a court must weigh any expansion or refinement" of an inmate's procedural rights "against the safety of all the prisoners and of the

corrections staff." <u>McDonald</u>, 139 N.J. at 194. However, we discern no degradation of safety by requiring, under the circumstances presented here, a confirmatory test that is routinely ordered in similar cases involving specimens. In sum, we conclude that denying Blanchard a confirmatory test was arbitrary, capricious or unreasonable, and deprived him of a fundamentally fair proceeding under the circumstances. We reverse the disciplinary finding and sanction, and we remand for a new hearing only if the agency preserved the powder and submits it for a confirmatory laboratory test.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3834-17T4