636 A.2d 1058

WILLIAM ENGEL, APPELLANT, v. NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 7, 1993—Decided January 13, 1994.

Before Judges PRESSLER, DREIER and KLEINER.

*Hartman, Marks & Nugent,* attorneys for appellant (*Francis J. Hartman,* on the brief).

*Fred DeVesa,* Acting Attorney General, attorney for respondent (*Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mamta Patel,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Following administrative proceedings, William Engel, an inmate at New Jersey State Prison,[1] was found guilty of planning an escape. Severe disciplinary sanctions were imposed, including 15 days detention, 365 days administrative segregation, and 365 days loss of commutation time. We stayed the sanctions pending appeal and now reverse and remand for administrative reinvestigation and reconsideration of the charges.

The adjudication here appealed from was based exclusively on information provided to prison investigators by a single confidential informant respecting Engel's alleged escape plan. We have carefully scrutinized the confidential record on which the adjudication relied. We are unable to find therein a single objective shred of corroboration of the confidential informant's statements or that Engel was in fact planning an escape.[2] We find that all the more surprising since the informant and the investigators were in communication about Engel's alleged escape plan over an extended period of time.

---

[1] See as to the background of defendant's confinement on a conviction of murder, *State v. Engel,* 249 *N.J.Super.* 336, 592 A.2d 572 (App.Div.), *certif. denied,* 130 *N.J.* 393, 614 A.2d 616 (1991).

[2] As noted hereafter, the hearing officer considered a sketch of an "escape" location prepared either by the informant or the investigators based on the informant's information. There is, however, nothing to connect this sketch to Engel. Any prison inmate apparently had the requisite knowledge. Nor is there anything else in any of the information providing an independent link to Engel or suggesting that anything in the informant's story actually emanated from Engel.

Engel absolutely and unequivocally denied ever having planned an escape or ever having talked to any inmate about an escape. Since, as we have noted, the informant's allegations were entirely uncorroborated by any objective evidence, the issue before the hearing officer was exclusively that of credibility as between the informant and Engel. We further note that the informant's allegations were presented to the hearing officer in the form of hearsay, and it does not appear from this record that the hearing officer relied on anything other than the reports of the prison investigators as to what the informant had said to them. Consequently, the hearing officer was in no position to make an independent or direct evaluation of the informant's credibility. The investigating authorities had, however, attempted to bolster the informant's credibility by their assertion that he had proved reliable in the past. They had also subjected the informant to a polygraph test, which he "passed." The brief report of the polygraph test was also part of the confidential report. Engel's request, however, for a polygraph test for himself, made when he learned that the informant had been tested, was denied. The Superintendent affirmed the hearing officer's adjudication, which had rested on this evaluation of the confidential information:

> ... C–1 contains numerous verbal conversations with informant who provides ongoing information containing informant's personal knowledge of inmate Engel's planning an escape; C–2 contains results of polygraph of informant regarding his statements to Internal Affairs Investigators. The polygraph showed no deception on informant's part; C–3 is a diagram of the alleged escape route as planned; Informant's information is considered reliable and credible because of the intimate nature of information provided, because it is corroborated as an escape route by C–3, because it is corroborated informant truthful by C–2, because informant has been used in past with success in drug and weapons cases; C–4 "For Superintendent's eyes only" contains more detailed information.

We are satisfied that the mere recital of these facts is sufficient to demonstrate the substantial defects in these proceedings. We recognize that prison inmates are entitled only to limited procedural due process rights in the conduct of disciplinary proceedings. *Avant v. Clifford,* 67 *N.J.* 496, 341 *A.*2d 629 (1975). But they are nevertheless not entirely subject to the arbitrary exercise of the disciplinary discretion by the institution. There

must be some reasonable opportunity, however circumscribed, to reasonably defend reasonably articulated charges, and there must be substantial evidence to sustain them. None of these conditions was met here.

We appreciate that the confidential-informant situation raises special problems of notice, confrontation, and disclosure. We are, however, also mindful that *lettres de cachet* went out with the Constitution. Thus, as we insisted upon in *Fisher v. Hundley*, 240 *N.J.Super.* 156, 572 *A.*2d 1174 (App.Div.1990), the imperatives of protection of the informant from retaliation must nevertheless reasonably accommodate some modicum of fundamental fairness to the accused inmate. *See also N.J.A.C.* 10A:4–9.15(b)1, addressing adjudication based on informant statements. There was no such accommodation either afforded or attempted here, and for that reason we must remand for reinvestigation and reconsideration of these charges.

We note first that *N.J.A.C.* 10A:4–11.4 expressly authorizes the Superintendent of the institution to order a reinvestigation of the charge against an inmate based on information furnished after the appeal. Engel's request for a polygraph test, apparently made as soon as he realized that the hearing officer had relied on the informant's polygraph test, must surely be regarded as new information or as leading to new information in these circumstances. Moreover, paragraph (d) of *N.J.A.C.* 10A:4–11.4 expressly authorizes the Superintendent to request polygraph testing upon the finding of "serious issues of credibility." The Superintendent's failure to regard the issue of credibility here as serious and his consequent denial of Engel's request for polygraph testing constituted, in our view, an unsustainable exercise of discretion.

■ We are persuaded that considerations of minimal due process required the granting of Engel's request for a polygraph test. We are also persuaded that there must be a level playing field in this regard as between Engel and the informant. Recognizing the degree of unreliability which continues to attend poly-

graph testing,[3] we conclude that the best way to assure that level playing field is for the informant's original test to be disregarded and to have both the informant and Engel tested now by the same competent qualified operator, but not the operator who administered the informant's initial test.

We make this further observation. In view of the seriousness of the allegations against Engel, their lack of objective corroboration and Engel's denial, we find it difficult to understand why the issue of the informant's credibility was decided substantially on the basis of hearsay in investigation reports and why neither the hearing officer nor the Superintendent saw fit himself to interview and question the informant. We think it plain that direct questioning of the witness in a face-to-face interview would have provided a far superior method for assessing witness credibility, and we also are persuaded that such interviewing could have been done in a way that would have protected the informant from disclosure of his identity to the inmate population.

We do not consider at this time Engel's remaining challenges to the disciplinary adjudication. The reconsideration of the charges following the polygraph testing we here direct may moot those challenges. We trust, however, that irrespective of the outcome of the polygraph testing, the Superintendent will insure that the dictates of *N.J.A.C.* 10A:4–9.15(b) are followed and that every reasonable effort will be made to test the truth of the informant's allegations and to permit Engel meaningfully to respond to them.

We remand for further proceedings consistent herewith. The stay we have heretofore ordered shall, however, remain in effect pending the new adjudication. We do not retain jurisdiction.

---

[3] Nothing we say herein should be construed as an endorsement by us of polygraph evidence beyond the extent to which it is otherwise now admissible. We accede to it in these circumstances only in view of the controlling administrative regulation.