**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1889-23

JOHN JOHNSON,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted September 16, 2025 – Decided October 1, 2025

Before Judges Gilson and Perez Friscia.

On appeal from the New Jersey Department of Corrections.

John Johnson, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Joseph D. Sams, Deputy Attorney General, on the brief).

PER CURIAM

Appellant John Johnson, previously incarcerated at New Jersey State Prison (NJSP), appeals from the September 29, 2023 New Jersey Department of Corrections (DOC) final agency decision, upholding a hearing officer's finding that Johnson was guilty of prohibited act *.002, assaulting any person, N.J.A.C. 10A:4-4.1(a)(1)(ii), and imposing modified sanctions. [1] Having reviewed the record, parties' arguments, and applicable law, we affirm the DOC's decision finding Johnson guilty of the prohibited act and dismiss his appeal of the modified sanctions as moot.

## I.

On August 24, 2023, at about 8:32 a.m., Johnson was housed at Mid-State Correctional Facility (MSCF). Sergeant R. Evers [2] was working at MSCF's nurse's station, which was located in the facility's gym. Johnson had "refused multiple orders" to open his mouth and "lift his upper lip," which was necessary to confirm he ingested the administered medication. Evers observed

---

[1] After Johnson was released from NJSP in May 2025, we sought the parties' submission of supplemental briefing on whether Johnson's appeal was moot. On September 12, 2025, the State moved to dismiss the appeal as moot, which we denied, in part, subject to our consideration of the mootness argument on this appeal.

[2] The first names of the correctional staff are not in the record.

A-1889-23

Johnson being non-compliant and heard him yell, "There[ is] nothing in my lip you fat b[****]."

Evers escorted Johnson outside of the gym to deescalate the situation. Upon reentering the gym with Johnson, Evers ordered Johnson to retake his seat, which Johnson refused. Evers placed his left hand on Johnson's left shoulder "to guide him away from the cage and back towards his seat" and again requested Johnson return to his seat. Johnson then "swung his right arm[,] striking . . . Evers['s] left arm." Because Johnson struck Evers, Officers C. Sierchio and J. McGauley placed Johnson in handcuffs and escorted him out of the gym. Officer L. Horn also responded and requested Johnson to calm down. In response, Johnson turned and yelled, "Suck my d[*]ck, you fat b[****]."

Johnson thereafter refused multiple requests to walk to the clinic, forcing officers to carry Johnson while he was "agitated" and "loud." Johnson began cooperating at the clinic, where he complained of "feeling dizzy" but was uninjured. Evers, Sierchio, and McGauley captured the incident with their body-worn cameras (BWC).

Johnson was charged with the following prohibited acts: *.002, assaulting any person; *.256, refusing to obey an order of any staff member,

3

A-1889-23

N.J.A.C. 10A:4.1(a)(2)(xvii); *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility, N.J.A.C. 10A:4.1(a)(2)(xix); and *.057, sexual harassment involving repeated and/or unwelcomed sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature, N.J.A.C. 10A:4.1(a)(3)(iv).[3]

On August 25, 2023, Johnson was served with the disciplinary charges. After his charges were set for a disciplinary hearing, Johnson was assigned substitute counsel and pleaded not guilty. On September 1, Hearing Officer Morales-Pitre postponed the scheduled disciplinary hearing to provide the parties an opportunity to obtain and view the BWC footage.

On September 11, Morales-Pitre held the disciplinary hearing. In considering the charges, Morales-Pitre reviewed the BWC footage. Johnson declined the opportunity to call witnesses. He requested Morales-Pitre to consider that he had "no priors," suffered from post-traumatic stress disorder (PTSD), and had only "shrugged" his shoulder.

---

[3] "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . ." N.J.A.C. 10A:4-4.1(a).

A-1889-23

Morales-Pitre found Johnson guilty of prohibited act *.002 because the "video footage" constituted substantial evidence supporting the charge. Johnson's other charges were subsumed within the *002 charge. Morales-Pitre sanctioned Johnson to: one-hundred eighty-days loss of phone use; three-hundred days in a restorative housing unit (RHU); three-hundred days loss of commutation time (LOCT); and thirty days loss of TV/Radio, Canteen, JPay[4] email, and recreation privileges.

On September 21, Johnson appealed Morales-Pitre's decision to the DOC. Johnson argued insufficient evidence existed to support Morales-Pitre's determination of guilt, and that the ordered sanctions were excessive. Specifically, he asserted: officers at another facility had previously assaulted him, resulting in his PTSD that causes him to "'shrug[] off the person who touches him as a defensive measure'"; and the BWC footage "show[ed]" Johnson "shrug[] off" Evers's arm from his shoulder.

On September 23, after reviewing the arguments presented and the hearing record, the DOC's Assistant Superintendent upheld Morales-Pitre's decision that Johnson committed prohibited act *.002, finding he assaulted

---

[4] JPay is a private company that partners with correctional facilities to provide inmates the ability to send and receive digital messages.

A-1889-23

Evers. The Assistant Superintendent modified Johnson's loss-of-phone sanction from one-hundred eighty to forty-five days.

On appeal, Johnson raises the following arguments for our consideration:

> POINT I
>
> THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A GUILTY FINDING, THEREFORE, THE SANCTIONS MUST BE VACATED AND THE MATTER REMANDED TO THE DEPARTMENT FOR A NEW HEARING.
>
> POINT II
>
> THE SANCTIONS IMPOSED ARE EXCESSIVE AND MUST BE MODIFIED (Engel v. D.O.C., 270 N.J. Super. 176 (App. Div. 1994).

II.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). As we have long recognized, "[P]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)). Therefore, "[w]e defer to an agency decision and do not reverse unless

6

it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Blanchard, 461 N.J. Super. at 238-39 (quoting Stallworth, 208 N.J. at 194). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). But "our review is not 'perfunctory,' nor is 'our function . . . merely [to] rubberstamp an agency's decision.'" Blanchard, 461 N.J. Super. at 239 (alteration in original) (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010)). Instead, "[w]e are constrained to engage in a 'careful and principled consideration of the agency record and findings.'" Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).

A hearing officer's findings are required to be "sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon

which the order is based afford a reasonable basis for such order." Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 122 (App. Div. 2002) (quoting N.J. Bell Tel. Co. Commc'ns Workers of Am., 5 N.J. 354, 377 (1950)). We review a DOC decision in a prisoner disciplinary proceeding to determine whether the record contains substantial evidence that the inmate has committed the prohibited act, and whether, in making its decision, the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

## III.

We first address Johnson's contention that the Assistant Superintendent's decision to uphold Morales-Pitre's guilty finding for assaulting Evers must be vacated because there was insufficient evidence.[5] He maintains no assault occurred and he shrugged off Evers's arm because of his PTSD. After a careful review of the record, including the BWC footage submitted, we are

---

[5] We conclude Johnson's contention regarding the Assistant Superintendent's decision regarding his guilt is not moot because the DOC maintains a record of an inmate disciplinary infractions, which may be considered if the inmate is later incarcerated and seeking parole. See N.J.A.C. 10A:71-3.11(b)(2), (7) (including the "commission of serious disciplinary infractions" and "pattern[s] of less serious disciplinary infractions" as factors that may be considered at parole hearings).

A-1889-23

satisfied that the Assistant Superintendent's decision regarding Johnson's guilt is supported by substantial credible evidence in the record.

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence has been defined . . . as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, 461 N.J. Super. at 238 (quoting Figueroa, 414 N.J. Super. at 192). The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion. Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022).

The Assistant Superintendent found the charge was "fair and supported by substantial evidence" because "reports and video clearly show[ed] [Johnson] striking . . . Evers." The Assistant Superintendent further found Johnson's "behavior prior to the assault and after the assault demonstrated [his] inability to exercise self[-]control." The record supports the Assistant Superintendent's decision to uphold Morales-Pitre's finding Johnson was guilty of prohibited act *002.

We next turn to address Johnson's alternative argument that if the Assistant Superintendent's decision stands, the RHU and LOCT sanctions should be remanded to the DOC for a downward modification because they are excessive. As we have already noted, Johnson has been released from NJSP. Therefore, we conclude his contentions regarding a downward modification of the sanctions imposed are moot.

New Jersey appellate courts "normally will not entertain cases when a controversy no longer exists and the disputed issues have become moot." Int'l Bhd. of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 224 (App. Div. 2021) (quoting De Vesa v. Dorsey, 134 N.J. 420, 428 (1993)). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). "It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993).

For these reasons, we dismiss Johnson's challenge regarding the sanctions imposed.

A-1889-23

Affirmed in part and dismissed in part.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1889-23